NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WILLIAM G. BERARDINO,** | |
| Plaintiff, | |
| v. | Civil Action No. 14-3451 (ES) (JAD) |
| **PRESTIGE MANAGEMENT SERVICES, INC.,** | |
| Defendant. | **OPINION** |
| **PRESTIGE MANAGEMENT SERVICES, INC., PRESTIGE MOTORS, INC., and PRESTIGE LAND ROVER, INC.,** | |
| Plaintiffs, | Civil Action No. 14-3492 (ES) (JAD) |
| v. | |
| **WILLIAM G. BERARDINO,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is William G. Berardino's ("Berardino") appeal (D.E. No. 182) from United States Magistrate Judge Joseph A. Dickson's (the "Magistrate Judge") July 14, 2016 Letter Order (D.E. No. 177, "Letter Order") assessing the applicability of the attorney-client privilege and the work-product doctrine to five documents belonging to Prestige Management Services, Inc., Prestige Motors, Inc., and Prestige Land Rover, Inc. (collectively, "Prestige"). Having considered the parties' positions in support of and in opposition to the instant appeal, the

1

Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court AFFIRMS the Magistrate Judge's Letter Order.

## I. BACKGROUND

This matter comes to the Court upon Berardino's appeal of the Magistrate Judge's Letter Order, which ruled on the applicability of the attorney-client privilege and the work-product doctrine to five documents. (*See* D.E. No. 182-1, ("Mov. Br.")). As a result of a consent order entered on September 19, 2016, only one document—"Document 4"—remains in dispute for the purposes of this appeal. (D.E. No. 196, ("Opp. Br.") at 1; D.E. No. 202, ("Reply Br.")). Following an *in camera* review of all five documents originally at issue, the Magistrate Judge held, among other things, that Document 4 "should not be produced as it is marked 'draft' and, therefore, [it is] precluded from production under Federal Rule of Civil Procedure 26(b)(4)(B)." (Letter Order at 3-4 n.4).

Prestige, a group of companies that deals with the ownership, management, and operation of car dealerships, brought an action against Berardino, former chief operating officer and vice president at several of the Prestige companies. (*See* D.E. No. 178, Second Amended Complaint ("SAC")). The crux of Prestige's allegations (for the purposes of this appeal) is that "Berardino knowingly masterminded, orchestrated, and facilitated several different, but interrelated scams . . . . involving the improper sale of vehicles at certain Prestige dealerships." (*Id.* ¶¶ 62-63). Berardino's performance bonus and stock interest were tied to the financial performance and profit of certain Prestige dealerships under his supervision and control. (*Id.* ¶ 61). The purpose of the alleged scams, therefore, was to artificially inflate vehicle sales and the financial performance of certain Prestige dealerships, which, in turn, would induce Prestige to pay Berardino artificially inflated (and unearned) compensation. (*Id.* ¶ 63).

Berardino's alleged scams eventually led to government investigations and "a flurry of subpoenas." (Opp. Br. at 4-5). On November 5, 2013, Prestige retained Axiom Advisors ("Axiom") (a professional consulting and accounting firm focused on the retail automotive industry) to assist its counsel in providing legal advice regarding a host of matters, including the pending government investigations and subpoenas regarding export sales, employment matters, and potential litigation. (*Id.* at 6). Prestige then placed Berardino on administrative leave on November 12, 2013, and ultimately terminated him on February 17, 2014. (*Id.* at 6-8). And on May 30, 2014, Prestige commenced a lawsuit against Berardino. (D.E. No. 1).

For over two years, Axiom worked on multiple projects for Prestige, including "to assist counsel in anticipation of litigation." (Opp. Br. at 10). Axiom has also served as Prestige's litigation consultant during the course of this case. (*Id.*). Document 4 sets forth Axiom's analyses and preliminary findings concerning its review of certain vehicle sales—some of which are at issue in this case—in which no sales tax was paid. (*Id.* at 11). Axiom drafted Document 4 at the request of Prestige's lead litigation counsel in this case for purposes of litigation support; specifically, to facilitate counsel's provision of legal services to Prestige in connection with (i) this case, including the prosecution of claims against Berardino; and (ii) counsel's representation of Prestige in negotiations with the New Jersey Department of Treasury, Division of Taxation, regarding sales tax claimed to be owed for certain vehicle sales. (*Id.*). The document is dated October 22, 2014, addressed from Axiom to Prestige's outside counsel, and marked as a "draft" on every page. (*Id.*; Mov. Br. at 1 n.2).

## II. STANDARD OF REVIEW

A federal magistrate judge may hear and determine any non-dispositive pretrial matter pending before the court. *See* 28 U.S.C. § 636(b)(1)(A). A magistrate judge's decision regarding

discovery is a non-dispositive matter under § 636(b)(1)(A). *Schiano v. MBNA*, No. 05-1771, 2009 WL 1416040, at *2 (D.N.J. May 19, 2009).[1]

Section 636(b)(1)(A) provides, however, that a district judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Similarly, Federal Rule of Civil Procedure 72(a) provides that, for non-dispositive matters, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* L. Civ. R. 72.1(c)(1)(A). So, "the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992).

The district judge "is bound by the clearly erroneous rule in reviewing questions of fact." *Haines*, 975 F.2d at 91. "A finding is considered 'clearly erroneous' when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289, 2014 WL 1494592, at *7 (D.N.J. Apr. 16, 2014) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Notably, a district judge may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination. *See Haines*, 975 F.2d at 91 ("[T]he district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact."). Further, when reviewing factual determinations, "the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently." *Monaco v. City of Camden*, No. 04-2406, 2007 WL 2139420, at *3 (D.N.J. July 23, 2007).

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

4

"[T]he phrase 'contrary to law' indicates plenary review as to matters of law." *Haines*, 975 F.2d at 91. "A decision is considered contrary to law if the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Merck Sharp & Dohme*, 2014 WL 1494592, at *7 (quoting *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006)).

Finally, "[t]he burden is on the party filing the notice of appeal to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013).

### III. DISCUSSION

#### A. The Parties' Arguments

***Rule 26(b)(4)(B).*** Berardino objects to the provision of the Letter Order permitting Prestige to withhold Document 4 as a draft expert report under Rule 26(b)(4)(B) because, according to Berardino, Prestige has not (i) "identified Axiom or any person or entity[] as an expert who may be used at trial to present evidence"; and (ii) "designated Axiom as an expert retained solely for trial preparation." (Mov. Br. at 1-2 n.3).

In response, Prestige maintains that it "has consistently described Axiom as its litigation consultant in multiple letters to the court and attorney certifications." (Opp. Br. at 15). Prestige further notes that it "is not required to 'designate' non-testifying experts retained solely for trial preparation." (*Id.*). And it argues that, in any event, "whether Axiom's draft documents are entitled to protection under Rule 26(b)(4)(B) is beside the point, because they are protected work product regardless of Axiom's status as a testifying or non-testifying expert." (*Id.*).

***Implied Waiver.*** Berardino argues that the Magistrate Judge's Letter Order is contrary to law—specifically, that it is contrary to the implied waiver doctrine as applied in the Third Circuit. (Reply Br. at 10). He notes that "Prestige has represented, among other things, that it was the

5

Axiom investigation that revealed the alleged misconduct on which it now bases both its affirmative claims and its defenses against Mr. Berardino." (Mov. Br. at 4-5). And by alleging that "it placed Mr. Berardino on administrative leave 'pending the outcome of a forensic audit by Axiom,'" Berardino argues that Prestige placed "the Axiom investigation at issue in this litigation." (*Id.* at 4, 7). Berardino explains that "the analysis contained in Document 4 is central to Prestige's case, and, based on Prestige's own allegations, falls well within the scope of the Axiom investigation that 'revealed' the alleged misconduct upon which Prestige has built its entire case." (Reply Br. at 7).

Berardino further contends that Prestige has impliedly waived any attorney-client or work-product protections "by asserting an affirmative defense of good faith." (Mov. Br. at 7). According to Berardino, having asserted that affirmative defense, Prestige cannot prevent Berardino from "testing these claims by examining the basis for placing Mr. Berardino on administrative leave, and the way in which it initiated and directed the investigation by Axiom that allegedly exposed the purported misconduct at the heart of this case." (*Id.* at 5).

Finally, in anticipation of Prestige's argument that Document 4 was created after (and thus could not have been a factor in) Berardino's termination, Berardino asserts that "Prestige's implied waiver is a subject-matter waiver, and therefore encompasses Document 4 even if Document 4 was not created until after Mr. Berardino resigned from Prestige and after the commencement of this litigation." (Reply Br. at 2).

While Prestige disputes Berardino's underlying premise that Document 4 is relevant, it nevertheless avers that Berardino is not entitled to Document 4 because the document "was created eight months after Berardino was terminated and five months after litigation commenced." (Opp. Br. at 16) (alterations omitted). So, "Prestige could not have relied on Document 4 as a basis to

6

terminate Berardino." (*Id.* at 18). Prestige also underscores that Document 4 was created by Axiom in its role as "litigation consultant for Prestige's litigation counsel during the course of this case, well after the events that preceded Berardino's termination." (*Id.* at 19).

### B. Attorney-Client Privilege

A party may obtain discovery of any matter that is "nonprivileged" and "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Included in the meaning of "privileged" is the attorney-client privilege, which protects from discovery communications from a client to an attorney for the purpose of obtaining legal advice, as long as they were meant to be confidential. *Wachtel v. Guardian Life Ins. Co.*, No. 01-4183, 2006 WL 1286188, at *1 (D.N.J. May 8, 2006) (citing *United States v. Rockwell Int'l,* 897 F.2d 1255, 1264 (3d Cir.1990)).

One exception to the attorney-client privilege is waiver. The privilege may be waived by the client either expressly (as when a client voluntarily turns over privileged documents) or implicitly (as when the client places otherwise privileged matters in controversy (i.e., "at issue)). *See Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (citing an example of "at issue" waiver as asserting reliance on the advice of counsel as an affirmative defense). The key element in "at issue" waiver is that the client has affirmatively put the attorney's advice at issue by disclosing an attorney-client communication. *Id.* Under the doctrine of partial waiver, if a party "discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Wachtel*, 2006 WL 1286188, at *1 (citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1426 n.12 (3d Cir. 1991)).

### C. Work-Product Doctrine

The work-product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The purpose of the doctrine to "maintain[ ] legal professionalism by precluding attorneys from capitalizing on an adversary's work efforts." *Jame Fine Chemicals, Inc. v. Hi-Tech Pharmacal Co.*, No. 00-3545, 2006 WL 2403941, at *3 (D.N.J. Aug. 18, 2006). The doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (quoting *United States v. Nobles,* 422 U.S. 225, 238 (1975)).

The work-product doctrine, however, is not absolute: a party may waive attorney work product protection by selective disclosure of protected materials. *Westinghouse Elec. Corp.*, 951 F.2d at 1428. "A disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance. Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *Id.*

### D. Analysis

Berardino appears to concede that Document 4 enjoys the protections of the attorney-client privilege and the work-product doctrine; rather, Berardino argues that Prestige has impliedly waived these protections. (Mov. Br. at 2). After reviewing the record and the parties' arguments, this Court finds that the Magistrate Judge's decision is neither clearly erroneous nor contrary to law.

*First,* the Court finds that Berardino's objection to the provision of the Letter Order permitting Prestige to withhold Document 4 as a draft expert report under Rule 26(b)(4)(B) is meritless. (*See id.* at 1-2 n.3). As Prestige aptly notes, it has "consistently described Axiom as its litigation consultant in multiple letters to the court and attorney certifications." (Opp. Br. at 15) (listing examples). And the law is clear: the work-product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, *consultant*, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003).

Here, the Magistrate Judge recognized that "Axiom is without a doubt a consultant and perhaps an expert under Federal Rule of Civil Procedure 26(b)(4)." (Letter Order at 2 n.2). And regardless of whether Axiom is a consultant or an expert, the Magistrate Judge correctly noted that "[i]n either event, the analysis is substantially similar [to the work-product doctrine]" and ordered that Document 4 be precluded from production. (*Id.* at 2 n.2, 4). Moreover, "The District Court accords 'particular deference . . . to magistrate judges on discovery issues.'" *Rapaport v. Robin S. Weingast & Assocs., Inc.*, No. 11-2254, 2013 WL 6022441, at *2 (D.N.J. Nov. 13, 2013) (alteration omitted)); *see also C.G. v. Winslow Twp. Bd. of Educ.*, No. 13-6278, 2015 WL 3794578, at *2 (D.N.J. June 17, 2015) ("[S]ince the magistrate judge is fully involved with the facts and record of the case, district judges give significant deference to a magistrate judge's discovery rulings."). Given this backdrop, Berardino's argument—confined to a footnote and without citation—does not persuade this Court that the Magistrate Judge's decision is either clearly erroneous or contrary to law.

9

*Second,* the Court rejects Berardino's argument that the Letter Order is contrary to the implied waiver doctrine as applied in the Third Circuit. "A decision is considered contrary to law if the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Merck Sharp & Dohme*, 2014 WL 1494592, at *7. As Prestige points out, Berardino cites no binding authority in his moving brief. (*See* Mov. Br.; Opp. Br. at 14). And *Glenmede Trust Co. v. Thompson*, on which Berardino relies in his reply brief, is inapposite. 56 F.3d 476, 486 (3d Cir. 1995) (cited in Reply Br. at 10-12). There, the appellant "raised reliance on the advice of counsel . . . as an affirmative defense . . . and voluntarily produced the Opinion Letter and a draft of it in response to discovery requests." *Id*. There is no such affirmative defense here, and Berardino does not allege that Prestige selectively produced some privileged documents while withholding others. The remainder of Berardino's (persuasive) authority is also distinguishable from the facts at hand. *See, e.g.*, *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 156, 160-62 (D.N.J. 2008) (applying New York law and ordering production of documents because defendant "failed to meet its burden of demonstrating that the communications at issue . . . were rendered primarily for purposes of obtaining legal—as opposed to business—advice"); *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1096 (D.N.J. 1996) (holding that employer waived its privileges and requiring disclosure of content of sexual harassment investigation conducted by attorney partly because "the content of the investigation is relevant to much more than the [employer's] state of mind," as "employers may refute [Title VII liability] by proving that they *reasonably* and *sufficiently* investigated the allegations of discrimination").

Indeed, this case is more analogous to *Rhone–Poulenc Rorer*, in which the Third Circuit held that "[a] party does not lose the privilege to protect attorney-client communications from

10

disclosure in discovery when his or her state of mind" is placed at issue.[2]  32 F.3d at 864.  In *Rhone–Poulenc*, like here, advice of counsel was not raised as an affirmative defense nor were there any acts evincing a clear intent to waive the attorney-client privilege by placing at issue reliance on the advice of counsel. *See id*.  In fact, the Third Circuit explicitly rejected Berardino's argument here—that by asserting the affirmative defense of good faith, Prestige has impliedly waived its privileges.  The Third Circuit noted that:

> Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation.  These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions.  These decisions are of dubious validity.  While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed.  Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

*Id.*; *see also Merck Sharp & Dohme Pharm. SRL v. Teva Pharm. USA*, No. 07-1596, 2008 WL 4837397, at *7 (D.N.J. Nov. 5, 2008) (holding that party did not waive the attorney-client privilege "by injecting into issue the alleged good faith state of mind of those involved in the prosecution of [a] patent").  Accordingly, the Court finds that the Magistrate Judge's decision is neither clearly erroneous nor contrary to law.

*Finally*, the Court turns to Berardino's argument that the contents of Axiom's investigation are placed at issue to support his theory that (i) "Prestige was not acting in good faith when it placed Mr. Berardino on administrative leave"; (ii) "Axiom's investigation was preliminarily a pretext used to attempt to manufacture good cause to terminate Mr. Berardino's employment"; and (iii) "it was the Axiom investigation that revealed the alleged misconduct on which [Prestige] now

---

[2] Although the Third Circuit's holding in *Rhone–Poulenc Rorer* was "premised upon the unique facts of that case," *Glenmede Trust Co.*, 56 F.3d at 486, the Court is nevertheless guided by the Third Circuit's reasoning.

bases both its affirmative claims and its defenses against Mr. Berardino." (Mov. Br. at 4-5). Even assuming Berardino's contentions are true, Berardino's argument nevertheless fails because Document 4 (dated October 22, 2014) was created eight months after Prestige terminated Berardino and nearly five months after this litigation commenced and therefore could not have impacted Prestige's decision to either terminate Berardino or initiate this lawsuit. (Opp. Br. at 1). Thus, Berardino has again failed to meet his burden of demonstrating that the Magistrate Judge's decision was clearly erroneous or contrary to law.[3] *See McDonough*, 2013 WL 322595, at *2.

## IV. CONCLUSION

For the foregoing reasons, Berardino's appeal is DENIED and the Magistrate Judge's Letter Order is AFFIRMED. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Berardino requests the production of Document 4, in part, based on the fact that "Prestige has been ordered to produce the five Axiom documents in question" in two state cases involving lawsuits by two other Prestige employees. (Mov. Br. at 5). But this Court is not privy to the arguments presented to or the reasoning for the judges' decisions in the two state cases. Rather, this Court confines its review to the Magistrate Judge's Letter Order. As such, the Court finds that Berardino fails to meet his burden as he offers no support to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law. Indeed, as Prestige points out, the state court rulings are inapplicable because neither judge addressed waiver of the attorney-client privilege or the work-product doctrine—the threshold issues here. (*See* Opp. Br. at 20-22).